[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Robert Craig, commenced this pro se action by writ, summons and complaint returnable to the Judicial District of Windham on June 20, 1995 against the defendant, John Armstrong, Commissioner of the Department of Correction. On July 31, 1995 this matter was transferred to the Judicial District of Tolland. The plaintiff is a prisoner committed to the custody of the Commissioner.
The plaintiff seeks a declaratory judgment pursuant to General Statutes § 4-175 declaring that the Uniform CT Page 3878 Administrative Procedures Act (UAPA), General Statutes §4-166 et seq., mandates the procedure to be followed by the defendant in the formulation and adoption of regulations; that Administrative Directives 6.14, 9.2, 9.4, 9.5, and 10.1 are regulations to which the procedures for adopting regulations under the UAPA applies[1]; that each of the previously mentioned directives, which were adopted after October 1, 1985, were adopted in violation of the regulatory process mandated by the UAPA; and that the aforementioned directives are therefore unenforceable and cannot be invoked for any purpose.
The plaintiff also seeks a writ of mandamus requiring the defendant to adopt those directives as regulations in conformity to the UAPA; requiring the defendant to expunge any records pertaining to the plaintiff arising from the application of those directives; granting to the plaintiff all of the legal rights and privileges he enjoyed prior to the application of these directives to him and other relief ensuring that the defendant complies with the UAPA procedures for adopting regulations.
On September 21, 1995, the defendant filed an answer and two special defenses. The first special defense claimed that these directives do not constitute regulations as defined by the UAPA. The second special defense stated that the court lacks jurisdiction to entertain this action.
On August 7, 1997, the defendant filed a motion to dismiss and memorandum of law in support claiming that the allegations in the complaint have been rendered moot by the adoption of Public Acts 1997, No. 97-168, a validating enactment of the directives.[2] The plaintiff filed a memorandum in opposition to the motion, claiming that this case is not moot notwithstanding the validating legislation, because the defendant exceeded his authority in enacting the directives without compliance with the UAPA and the plaintiff has suffered injury as a result of the directives. Oral argument was held on December 5, 1997 and, at the request of the court, the directives at issue were forwarded to the court for its consideration on December 10, 1997 and December 16, 1997.
Public Act 97-168, effective October 1, 1997, states in relevant part:
Section 18-78a of the general statutes is repealed and the following is substituted in lieu thereof: CT Page 3879
* * *
(a)(4) ANY REGULATION, AS DEFINED IN SECTION 4-166, CONCERNING RIOT CONTROL, SECURITY AND EMERGENCY PROCEDURES, DISCIPLINARY ACTION, CLASSIFICATION OR OUT-OF-STATE TRANSFERS WHICH WAS ADOPTED BY THE DEPARTMENT OF CORRECTION PRIOR TO THE EFFECTIVE DATES OF THIS ACT AND WHICH IS OTHERWISE VALID EXCEPT THAT SUCH REGULATION WAS NOT ADOPTED IN ACCORDANCE WITH CHAPTER 54, IS VALIDATED, AND SHALL BE DEEMED TO HAVE BEEN ADOPTED IN COMPLIANCE WITH CHAPTER 54.
Administrative Directive 6.14 is entitled Security Risk Groups and, as its title suggests, relates to the identification, monitoring and control of those inmates who are defined by the directive as a member of a security risk group. The court finds that this directive concerns security and emergency procedures. Administrative Directive 9.2 is entitled Inmate Classification and relates to the classification of inmates to determine each inmate's risk and need level to determine the appropriate confinement location, treatment, program and employment assignment. The court finds this directive concerns classification. Administrative Directive 9.4, entitled Restrictive Status, sets forth the policy of restrictive conditions as required to preserve the order and security of correctional facilities and to manage inmate behavior. The court finds this directive concerns security and emergency procedures and classification. Administrative Directive 9.5 is entitled Code of Penal Discipline. It establishes rules of conduct, procedures to be used to determine acts of misconduct and sanctions to be imposed for misconduct. The court finds this directive concerns disciplinary action. Administrative Directive 10.1 is entitled "Inmate Assignment and Pay Plan." This directive establishes the organization and development of all inmate education and work programs. It includes provisions establishing work rules and conditions, pay scales and schedules, supervisor responsibilities and dealings with the private sector. This directive gives inmates notice of the disciplinary action to follow the refusal to do an assigned job and states that each job assignment will have certain openings for different levels of custody. The court finds, however, that while this directive gives necessary information about discipline and levels of custody, it does not concern disciplinary action or classification. In fact, this directive refers to Administrative Directive 9.5, Code of Penal Discipline, for the discipline that will be administered to CT Page 3880 inmates who refuse a work assignment. This directive concerns inmate work assignments.
"Justiciability requires . . . that there be an actual controversy between or among the parties to the dispute: Courts exist for determination of actual and existing controversies. . . . A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." (Citation omitted; internal quotation marks omitted.)Board of Education v. State Board of Education, 243 Conn. 772,776-77, ___ A.2d ___ (1998). A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). "When a [trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) Antinerella v. Rioux,229 Conn. 479, 489, 642 A.2d 699 (1994); Savage v. Aronson,214 Conn. 256, 264, 571 A.2d 696 (1990). When a motion to dismiss is not accompanied by supporting affidavits containing undisputed facts, the motion admits all facts which are well pleaded. Barde v.Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988). In determining whether a court lacks jurisdiction, the court takes judicial notice of a legislative enactment by the General Assembly. C.S.E.A., Inc. v. Connecticut Personnel Policy Board,165 Conn. 448, 452, 334 A.2d 909 (1973). "The effect of validating acts is to make legal and regular that which was illegal and irregular. The legislature may cure by subsequent enactment the nonobservance of a requirement which it originally might have dispensed with, provided that vested rights have not intervened. . . . Such an enactment may be applied retrospectively to pending cases." (Citation omitted; internal quotation marks omitted.) Manchester Environmental Coalition v.Stockton, 184 Conn. 51, 71, 441 A.2d 68 (1981). See also Gil v.Courthouse One, 239 Conn. 676, 689, 687 A.2d 146 (1997).
For the plaintiff to establish jurisdiction pursuant to General Statutes § 4-175, he must have a claim that his rights or privileges have been threatened or impaired by these administrative directives. C.S.E.A., Inc. v. ConnecticutPersonnel Policy Board, supra, 165 Conn. 455; General Statutes § 4-175. All the plaintiff's claims stem from the allegation that the defendant improperly promulgated these administrative CT Page 3881 directives. See Complaint, pp. 1-4. The court takes judicial notice of the enactment by the General Assembly of P.A. 97-168
and finds that such legislation has made legal and regular the promulgation of Administrative Directives 6.14, 9.2, 9.4 and 9.5, for each of them concerns riot control, security and emergency procedures, disciplinary action or classification. Accepting the facts in the complaint as true as the court must for purposes of a motion to dismiss, the court finds that the plaintiff does not have a claim that any right or privilege is threatened or impaired by these four directives. The validating act has determined that the plaintiff, claiming to be affected by a failure to comply with the promulgation requirements of the UAPA, does not have a legal right or privilege that has been impaired or threatened. C.S.E.A., Inc. v. Connecticut Personnel PolicyBoard, supra, 165 Conn. 455. Thus, the court finds that it lacks jurisdiction over the claims in the plaintiff's complaint pertaining to Administrative Directives 6.14, 9.2, 9.4 and 9.5.
The motion to dismiss is granted in part.
Zarella, J.